Case number 14-4068 Keith Crabbs v. Zach Scott et al. Oral argument not to exceed 15 minutes per side. Mr. Armstrong for the appellant. Morning. Morning, Your Honor. Your Honors. May it please the court. Jesse Armstrong, Franklin County, Ohio Prosecutor's Office on behalf of appellant Franklin County Sheriff Zach Scott. Sheriff Zach Scott is entitled to sovereign immunity in this case in his official capacity because in collecting DNA from felony arrestees, he was merely enforcing a mandatory state statute which required him to collect that DNA. In doing so, he exercised no discretion and created no county policy separate from the state policy. Therefore, he acted as an agent of the state in enforcing that policy. What part of the statute made him do this after an acquittal? No part of the statute required the collection after acquittal, Your Honor. Rather, the statute quite clearly required the collection at the time of intake. However, it is Sheriff Scott's position that his policy was in fact to follow the statute. His only policy regarding the collection of DNA from felony arrestees was to make the collection at intake. In this case, for whatever reason, the state policy and the county policy was not followed. However, it was Sheriff Scott's policy to take DNA from felony arrestees only at intake. I'm not sure I'm following what that means. In other words, you're saying, well, his policy was to do exactly what the statute says, which was to do it at intake, and that didn't happen here. And so you seem to be suggesting there was a violation of the policy and somehow that insulates him? Is that the point? I mean, doesn't the buck stop with him? Sheriff Scott, in his official capacity, the inquiry we suggest is that whether he's entitled to sovereign immunity in this case depends on any policy he created as the official on behalf of Franklin County. Where, as here, he did not create any policy but for the state policy. It is the policy of decisions of Sheriff Scott which are at issue, not the particular instance of collection here. Whether that may give rise to an individual capacity claim of those who may have improperly taken the DNA in this case is not before the court. I suggest that the acts to be judged here are Sheriff Scott's acts as the official policymaker of the county. And in that capacity, he never enacted any policy but for the state policy. But if the state policy was to take the DNA at the time of intake, that had clearly passed and you've conceded that that didn't happen. At the point this DNA was taken, it was well past intake and, in fact, after an acquittal. So he was not complying with the state policy. And in moving the DNA collection to this later stage, if he was the policymaker, wasn't he, in fact, creating a new policy? The specific instance of collection in this case that was against the state policy does not represent a policy decision of Sheriff Scott. Sheriff Scott, in making... Whose did the policy decision of? I'm sorry, Your Honor? Who is it a policy decision of? Well, it doesn't constitute a policy of the county. Then how do you characterize it? I characterize it as an isolated incident by employees of the Franklin County Sheriff's Office of noncompliance with the Sheriff's Office policy and noncompliance with the state statute. Why wasn't Mr. Crabb permitted to contact his attorney? The facts surrounding his request to contact an attorney at that time were not really fully developed before the district court. Quite frankly, Your Honor, I dispute the fact, and the Sheriff has always disputed, that they refused access to an attorney after he was acquitted and brought back for the standard out-processing procedures. At first, I wasn't quite following your argument, but I think I'm now getting it. But I have this one objection to it. And so we're here. One argument in front of us is whether the sheriff gets the benefit of the state's sovereign immunity. You started out on a point I think everyone agrees about, which is one way to look at that is whether what the sheriff did was required by the state statute. So we were all on the same page there. And then the shift you made was to then say, well, it's true, this wasn't an intake, but it wasn't the sheriff's responsibility as to what happened. Someone else did that. It wasn't pursuant to a policy of his. That second, that move you're making is fine when it comes to liability. But I think it's utterly unhelpful to you when it comes to sovereign immunity. Do you see the point I'm making? In other words, the sovereign immunity inquiry was whether you did what you did because the state made you. And if that's true, you can use the state's umbrella sovereign immunity. But we all agree what happened here was not required by the state. You started by saying that. If that's true, you may have some really great arguments on remand, but sovereign immunity is not one of them. So how do you respond to that way of thinking about it? Your Honor, I would assert that in his official capacity as the policymaker for Franklin County, the actions of Sheriff Scott here being analyzed here for the purposes even of sovereign immunity are his actions as the policymaker, as in the policies he enacted pursuant to the state statute. Great, great arguments on remand. They're just not helpful on sovereign immunity. You've conceded what happened was not consistent with the statute and, therefore, not required by the statute. In the case of Brotherton v. Cleveland, Your Honor, I would like to analogize there a similar case in that it was an official policy claim against a county official who claimed sovereign immunity based on the fact that he was enforcing state policy. There, like here, this Court's analysis focused not on the fact that the collection of corneas in that case actually violated the state statute, which it did. In analyzing whether the coroner was entitled to sovereign immunity for sovereign immunity purposes, it focused rather on the state law and whether it was permissive or mandatory. That's a different argument. That's the whole question of whether you're county or state officer, and there is that whole inquiry, which I think we'll shift to now, but it has nothing to do with your first point, which is, hey, this wasn't the sheriff's idea. That's only relevant on remand. Now this inquiry as to county v. state and the Brotherton test and the Supreme Court test, all the factors are pretty tough, right? I mean, you're elected, the sheriff's elected at the county level, paid at the county level, any judgment comes out of the county, coffers. Which is the factor that helps show he's a state official? Your Honor, I would suggest that the multi-factor test, as interpreted by Hess, is not dispositive on this issue. Rather, as this Court in its decisions – Is there a factor under Hess that helps you? Which factor helps you? No, Your Honor, there is not. Under Hess, the Franklin County Sheriff would be considered a local official, not a state official, not an arm of the state. Of this policy in the statute, collecting DNA, what government level benefits from that? Does the county benefit from it or from the state? Well, Your Honor, it is a state-created and run policy to create and maintain a DNA. Who benefits from getting the DNA? Government, law enforcement officers on all levels, federal, state, and local. Why would the state enact a statute if it didn't think it would get a benefit from this? It would not, Your Honor, and I agree with that point. Well, you know, we have all these cases that say, well, there's these factors and you're supposed to check them off, which is a little strange. Those can't be the only factors that we look at. I would have thought you would have argued that this statute was enacted for the benefit of the state, not the county. And I go through the statute and I say, well, if you don't get it done at intake, you can get it done later. If you don't get it done then, you can get it done in sentencing. You're not missing any of that. I'm missing something, that's all I'm saying. I don't get your argument either. The argument, Your Honor, the state statute, which was enacted, of course, by the Ohio General Assembly to maintain this DNA database run by the state for the benefit of the state, as you mentioned. It was silent as to what happened, only if DNA was not collected at intake. However, Sheriff Scott simply adopted that state policy as his own policy. There was no other discretion. He adopted no other policy for the county separate from that of the state. And it was that policy, Pate's policy in the state law, which compelled the collection of felony DNA from Mr. Krabs. I see your red lights on. You can continue going if you want to use your rebuttal time now, or you can save your rebuttal time. I will save my rebuttal time. Okay. Thank you. Okay. Mr. Hess. Good morning, Your Honors. Please, the Court. Counsel for Appellant. I'm Charlie Hess in no relation to Hess v. Port Authority, but we do believe it is dispositive. I'd like to direct the Court's attention to that and maybe a little bit away from some of what Appellant was arguing. First, the district court did recognize, per the Brotherton case, which was this court, that there was no forcing of the Sheriff to do what he did. And the Sheriff did, and the district court judge recognized, engage in conscious policy-making decisions. Are you complaining about your client being forced to have DNA taken? Is that your problem? Well, the ultimate issue would be yes, but not to complain today. Let's assume that it had been taken at intake, and he still acquitted. You don't have anything to complain about, do you? Not according to the statute. That would be the plain reading of the statute and a proper application. So we have intake. We have, let's see. Well, I can't find it. At arraignment, we have it at sentencing. But they never thought about putting acquittal in there. I understand your argument about them pushing him around, locking him up twice or whatever. Well, I don't see why you're complaining about DNA, because there's no harm if it had been done properly. And he was acquitted. You don't have anything to complain about. Well, addressing the harm issue, Your Honor, in other words, no harm, no foul, would be the interpretation, I think, of what you're saying. Wondering. The fellow's status changed dramatically from intake to when it occurred. This is probably the most egregious violation of a person's. Okay, so the legislature puts in another section. They say you can do it. If you don't do it here, here, here, you can do it even if you're acquitted. It won't survive the challenge. It would not survive the challenge, is my opinion. Your Honor, the. Well, why is that? I mean, because you wouldn't be indicted without probable cause. And so, in other words, why couldn't you say, listen, the better approach here is to do this before the trial. The best approach is, quote, at intake. But obviously, if there's probable cause, I mean, I think this is what Judge Norris is getting at. If there's probable cause, I think the odds are pretty high you can do this kind of cheek swab. And so why couldn't the statute account for, but if for whatever reason some mechanism doesn't work, the right hand doesn't know what the left hand is doing, you can make sure before someone leaves custody that they've had their cheek swab. Because there would have been probable cause at some point. I realize now, because an acquittal doesn't defeat probable cause. No, it wouldn't defeat probable cause. Acquittal defeats beyond a reasonable doubt. And so why couldn't they say that? Well, it wouldn't defeat probable cause retroactively because at the time there was probable cause, but the situation would have changed dramatically. If you added to the statute after acquittal and it were challenged, I'm sure the state could not show any reason, much less compelling reason, for requiring someone who's acquitted to submit to a DNA test. That would be the same thing as stopping us at a random road stop and saying, I want to check your DNA. Well, what's so bad about applying it to everybody for whom there's probable cause they committed a crime? Well, an affront to basic freedoms. That to me would be without question, Your Honor. This has gone beyond the ability to control an individual and invade his privacy. I understand the intuition. I just don't know of a case that says that. I just don't know. No, we did not find a case on that issue. That's right. We'd like the court to look at the Hess v. Port Authority case, which is dispositive because, importantly, there's no evidence in the record that the state would pay one penny of any judgment. And according to the Hess case as interpreted by Brotherton, if you have no evidence that a county official would have the judgment be paid by the state, there is sovereign immunity. End of issue. The Pusey case, a year before the Hess case on which the appellant relies, this court has said is a different angle. The Hess case goes to 11th Amendment issues, which we have today. Pusey goes to whether a particular act is violative or not. And this trial court has set a trial to determine whether this act violates one of the policies of the three that the sheriff has instituted in his discretion. Did the swab go to the state or to the county? The swab, your client's DNA swab, did it go to the state? Went to the county, yes. Is that right? I thought these things were all collected at the state level. Put into the system. But, I mean, the county collected the swab. But it went to the state. It eventually made its way there, yes. It goes into CODIS, which is national. And that is the testimony Mr. Krabs has given, which was quoted by the trial judge, that he feels on edge constantly because now he's a step closer to being a suspect in subsequent cases. Let's assume there's no statute. Does the sheriff have authority to take these swabs without this statute? At intake or at any time? Any time. Without the statute, I would say absolutely not. He may make a policy for it. It would certainly be challenged as an unlawful intrusion into the privacy of an individual. But nobody was doing it before this statute was amended? I don't know. I don't know. And with that, Your Honor, Appley has nothing else. All right. Thank you very much. Thank you. Mr. Armstrong, do you have some rebuttal? Thank you, Your Honors. Initially, I would like to go back to Mr. Krabs' contention that Hess is dispositive here. As we discussed previously, Hess in the multi-factor test is typically applied in a situation where an entity is claiming to be an arm of the state for general purposes. However, as this court's analysis in Brotherton, in Poussey v. City of Youngstown, in Garner v. Memphis Police, and in all other cases where it was analyzing whether a particular act of a county official or a local official can be attributed to the state, the Hess is not dispositive. Don't most of the Sixth Circuit cases say that local sheriffs are county as opposed to state employees or county as opposed to state entities? Well, they are, in fact, under Ohio law, county officials in their day-to-day operations. Where this is different is that Mr. Scott is not claiming to be an arm of the state for general purposes. Rather, as the plaintiffs or defendants were in the cases I just mentioned, he's claiming to be an agent of the state for the limited purpose of a particular act or policy which was compelled. But even if you assume that proposition, even if we accept that, in looking at whether or not immunity would apply, 11th Amendment immunity would apply, wouldn't we have to look at who would be liable in the event of damages? And here you've conceded that if there were damages, the state would not be liable for that. It would be the local county arm. And doesn't that hurt your case? I mean, if we apply that factor? If you apply that factor, that would hurt our case, Your Honor. And don't we have to apply that factor? No, Your Honor. The point is that Hess, again, while determining whether an entity is an arm of the state for general purposes, does not control the issue as here, as was in Brotherton or as was in Poussey, where a local actor is simply, excuse me, for a limited purpose, is claiming a right to sovereign immunity as an agent of the state for that limited purpose. As all of the analysis in those cases have gone. The way you argue that is you say, well, the state has a statute. The statute says to do this, that, and the other thing. And that's all he was doing. That's the way you're thinking about this. But in a way, that argues too much because there is no such thing as anyone, county, city level, not doing something. I mean, they're all doing something in connection with state law because it's state law that creates the counties. It's state law that permits county government. So do you see what I'm saying there? It seems problematic to say, well, they're always treated as a state for sovereign immunity purposes if they're acting in connection with state statutes. Well, it's state statutes that empower everything in the state, local or statewide. That is true, Your Honor. However, as was analyzed by this court in those cases, the analysis doesn't flow directly from Hess. It's not controlled by Hess. I'm not making a Hess point. I'm responding to your argument. I'm actually saying, okay, let's accept this is true. It would seem to suggest all local officials, municipal, county, I don't care what it is, local mayors, they're always acting in connection with state power and state authority because it's state statutes that allow those local governmental bodies. While I concur that, yes, the state, the General Assembly, enacts all the laws for the state of Ohio, the distinction is here that just for a particular purpose, where state law compels a particular act of a county official, specifically compels him to do an act pursuant to a specific state policy. Well, now we're back to this wasn't an intake, right? I just mean to say that there are limited instances where a county official is entitled to sovereign immunity for a limited purpose of specifically enforcing a state policy, which is the case here. The state laws required Sheriff Scott to take DNA from all felony arrestees. He enacted a policy to follow that statute, and that's what caused the collection here. All right. Thank you very much. Thank you. I appreciate your argument, Mr. Armstrong and Mr. Hess.  The case will be submitted. Clerk may call the next case.